IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PATRICIA J. PEARSON, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 06-1521-CL |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

KAREN STOLZBERG
11830 S.W. Kerr Parkway #315
Lake Oswego, OR 97035

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

JEFFREY BAIRD
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

CLARKE, Magistrate Judge:

Plaintiff Patricia Pearson ("Pearson") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVII of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, I recommend the Commissioner's decision be affirmed.

## BACKGROUND

Born in 1962, Pearson's education terminated prior to completing the tenth grade. Tr. 98, 526.[1] Between 1989 and 2002 Pearson reports work as a janitorial business owner and operator, recreational vehicle rental purveyor, fast food waitress, retail sales person, retail decorator, and senior and disabled services provider. Tr. 123.

Pearson filed applications for DIB February 7, 2003, and for SSI on July 16, 2003. Tr. 98-100, 434-38. Pearson alleges disability since August 8, 1996, due to "joint pain, extreme fatigue and exhaustion, depression, PTSD [post-traumatic stress disorder]" as well as "spurs in neck, feet and scoliosis." Tr. 110-111.

Pearson's applications were denied initially and upon reconsideration. Tr. 78-80, 83-87, 441-45, 447-49. A hearing was held before an Administrative Law Judge ("ALJ") on August 9, 2005. Tr. 508-579. The ALJ subsequently found that Pearson could perform her relevant work and therefore found her not disabled. Tr. 27-35. The Appeals Council accepted additional

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer February 28, 2007 (Docket #17).

2 - FINDINGS AND RECOMMENDATION

evidence into the record, but denied review of the ALJ's decision on September 8, 2006. Tr. 8-11. This action made the ALJ's decision the final decision of the Commissioner. Pearson seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Pearson challenges the ALJ's evaluation of the evidence and her conclusions at steps two and four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity ("SGA"). If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12 month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii), 416.909, 416.920(a)(4(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities that the claimant may still perform on

a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can perform her past relevant work she is not disabled. *Id.*

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v), 416.920(f).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g), 416.966, 416.920(g).

## THE ALJ'S FINDINGS

At step two in the sequential proceedings, the ALJ found that Pearson's "severe" impairments included "depressive disorder; anxiety disorder, possibly a post-traumatic stress disorder (PTSD) and episodic alcohol abuse." Tr. 28. She found that these impairments did not meet or equal a "listed" impairment at step three in the proceedings. *Id.*

The ALJ assessed Pearson's RFC:

> The claimant retains a residual functional capacity without physical limitations. She should work with no close interaction with the

general public, no complex tasks, no hazardous work locatoins,
and no sudden or unexpected changes in tasks, routines, or the
work environment.

Tr. 34. The ALJ found that this RFC allows Pearson to perform her past relevant work at step

four. Tr. 34-35. The ALJ therefore found Pearson not disabled. Tr. 35.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359

F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts

from the ALJ's conclusion. *Lingenfelter v. Astrue*, __ F.3d __ (2007 WL 2874403) at *5 (9th Cir.

October 5, 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing

court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robins v. Social

Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253

F.3d 1152, 1156 (9th Cir. 2001). In reviewing a credibility finding, the court must consider

whether the Commissioner provided "clear and convincing reasons" for finding a claimant not

credible. *Lingenfelter* at *6, *Reddick*, 157 F.3d at 722. Variable interpretations of the evidence

are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d

747 750 (9th Cir. 1989); *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Pearson claims the ALJ erred at step two in the sequential proceedings by failing to find

her post-traumatic stress disorder ("PTSD") and cardiac arythmia "severe." She also claims the

5 - FINDINGS AND RECOMMENDATION

ALJ improperly assessed her credibility, improperly evaluated the medical evidence, improperly questioned the vocational expert, and consequently reached erroneous conclusions at step four in the sequential proceedings.

## I.     The ALJ's Step Two Finding

### A.     Step Two Evaluations

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), *see also* 20 C.F.R. §§ 404.1521, 416.921. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. §§ 404.1509, 416.909.

### B.     Discussion

The ALJ found Pearson's "possible PTSD" "severe" at step two. Tr. 34. Pearson does not address this aspect of the ALJ's finding, instead asserting that the ALJ did not find her PTSD "severe" at step two. Pl. Opening Br. 21-25. This submission is not based upon the record and should not be sustained.

Regarding Pearson's submission that the ALJ failed to find her cardiac arrhythmia "severe" this court notes that the ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Pearson's submission that a finding of non-severity precludes inclusion in an RFC assessment is without merit. Because the ALJ proceeded beyond step three, any omission regarding a step two severity finding is inconsequential. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th

Cir. 2007).

## II.     Credibility

Pearson challenges the ALJ's credibility determination.

### A.     Legal Standard

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent evidence of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter* at *6. The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.     Discussion

#### I.     *Activities of Daily Living*

The ALJ noted Pearson's daily activities including Pearson's reports that she "did

household chores, went out for karaoke and dancing, visited others, cooked, [and] sewed." Tr. 32. The ALJ noted that Pearson testified that she "did some shopping, driving, and cleaning at home." *Id.* The ALJ concluded, "these activities do not suggest a person who is debilitated by fatigue, exhaustion, and social avoidance." *Id.*

The ALJ may cite activities of daily living to show that a claimant's activities contradict allegations of total disability. *Orteza*, 50 F.3d at 759. This citation is not a finding that such activities are transferable to the workplace. *See id.*

The Ninth Circuit also notes, "Although the evidence of [a claimant's] daily activities may also admit of an interpretation more favorable to [claimant], the ALJ's interpretation was rational, and "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (*citing Magallanes*, 881 F.2d at 750).

For these reasons court affirms the ALJ's finding that Pearson's activities of daily living, contradict the limitations described in her testimony.

### ii. *Contradictory Reports*

The ALJ suggested that Pearson offered contradictory testimony regarding a murder she reported witnessing. Tr. 33. Defendant submits that this testimony represents "a preposterous murder story." Def. Br. 6. This court finds this submission overzealous and without regard for the proper legal standards.

The ALJ may consider contradictory reporting by the claimant. *Smolen*, 80 F.3d at 1284. However, the record does not show whether Pearson fabricated her memories of witnessing a

murder. For this reason only, the ALJ's finding should not be sustained.

### iii.    Cancelled Appointments

The ALJ noted that "the claimant cancelled appointments with her psychological counselors in December 2004 (Exhibit 19F:2-3) but in January 2005 told another source that she was still going through counseling (Exhibit 20F:3)." Tr. 32. The ALJ inferred that "this false report suggests that, at least at times, the claimant is not forthright with her doctors." *Id.*

An ALJ may fault a claimant for failing to seek treatment. *Smolen*, 80 F.3d at 1284. However, Pearson correctly submits that the ALJ's present finding is not based upon the record. Pl. Opening Br. 28. The record shows that Pearson attended counseling appointments between September 2004 and January 2005. Pearson attended appointments in September, October, November, and December. Tr. 362-68, 370-72, 374. Pearson cancelled an appointment in November 2004 and failed to attend two appointments in December 2004. Tr. 366, 387-88. Pearson again attended appointments in January and February 2005. Tr. 362-63. The ALJ's inference that Pearson mislead providers about her counseling is not based upon the record and should not be sustained.

### iv.    Medical Record

The ALJ may cite the medical record in concert with other factors in considering a claimant's credibility. *Robbins*, 466 F.3d at 883. The ALJ presently stated, "the claimant's statements concerning her impairments and the nature and extent of her limitations are not entirely credible in light of information contained in the medical reports and other evidence of record." Tr. 29.

Because this court sustains the ALJ's citation to Pearson's daily activities, this court accepts the ALJ's citation to the medical record in conjunction with that finding. Pearson's argument does not assert specific errors in the ALJ's citation to the medical record in her credibility finding. Pl. Opening Br. 22-24. This assessment should be sustained.

### C.    Credibility Conclusion

In summary, the ALJ provided adequate reasons for finding Pearson not credible according to the relevant legal standards. For this reason, I recommend affirming the ALJ's credibility decision.

## II.    Medical Source Statements

Pearson contends that the ALJ failed to appropriately consider the opinions of a treating psychiatrist, an examining psychologist, and a reviewing psychologist.

### A.    Legal Standard

A treating physician's opinion is generally accorded greater weight than an examining physician's opinion. *Edlund*, 253 F.3d at 1157. The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating physician and "clear and convincing reasons" for rejecting an uncontroverted opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). This evaluation may set out a detailed and thorough summary of the facts and conflicting clinical evidence. *Magallanes*, 881 F.2d at 751. The opinion of the treating physician, however, is not necessarily conclusive to the ultimate issue of disability, which is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

///

**B.    Discussion: Mental Impairments**

**a.    Evaluating Psychiatrist Dr. Herz**

Pearson contends that the ALJ erroneously rejected the opinion of psychiatrist Dr. Herz. Pl. Opening Br. 30-32. Dr. Herz evaluated Pearson on one occasion only and the record does not indicate he was involved in her subsequent care at Crook County Mental Health. Tr. 420-222. Dr. Herz is evaluated as a treating physician, but the ALJ was entitled to give his opinion less weight because did not monitor Pearson's treatment. *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003). 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ noted Dr. Herz's assessment of PTSD, depression, and a panic disorder. Tr. 31. The ALJ summarized his report:

> The claimant's mental status examination was essentially within normal limits, however, with some episodes of concentration loss that were quickly recovered (Exhibit 24F:1-2). Dr. Herz' [sic] assessment seems to have relied largely on the claimant's subjective comments and it was not fully supported by his examination observations.

*Id.*

The ALJ concluded, "Dr. Herz did not perform any testing and he did not have access to a full record review. His testimony is not supported by the testimony of the psychologist at the hearing. This assessment is given no weight." *Id.*

The record shows that Dr. Herz evaluated Pearson at Crook County Mental Health on July 6, 2005. Tr. 420-22. Dr. Herz reiterated Pearson's reported history and stated "she appears to have normal functioning of her immediate, recent, and remote memory." Tr. 420-21. Dr. Herz assessed diagnoses of PTSD, recurrent major depression, and panic disorder with

agrophobia. Tr. 421. Dr. Herz deferred diagnosing a personality disorder. *Id.* Dr. Herz

considered Pearson's work-related limitations:

> The patient does appear to have marked impairment in her abilities
> to interact with other people in most contexts. She is able to do
> some interaction with her more functional family members,
> although this is stressful for her. She also is able to do some
> interactions with her church, which has been one of her primary
> sources of support. She has not been employed in any work for
> over 3 years . . . Her physical conditions, including her recurrent
> heart condition and past problems with repetitive motion injuries
> have interfered with her ability to work, but her recurrent panic
> attacks appear to be extremely limiting in her ability to follow
> through on a regular day-to-day work at this point despite her
> efforts to find employment.

*Id.*

The ALJ's RFC limited Pearson's interaction with the public and suggested "no sudden or

unexpected changes" in the work environment. Tr. 32. This assessment accounted for Dr. Herz's

non-exertional limitations. Dr. Herz's remaining comments regarding Pearson's physical

impairments are outside the scope of his opinion. Pearson furthermore does not challenge the

ALJ's omission of any physical limitations suggested by Dr. Herz and this aspect of his opinion

will not be addressed.

The ALJ erred in giving Dr. Herz's testimony "no weight" because it was "not supported"

by reviewing psychologist Dr. Dragovich. Tr. 31. This finding misconstrues the relevant

standard: a reviewing physician's opinion may not constitute substantial evidence justifying

rejection of a treating or examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th

Cir. 1995).

In summary, while the ALJ's reasoning regarding reviewing physician Dr. Dragovich is

not sustained, the ALJ's citation to Dr. Herz's assessment is based upon the record. Pearson fails to show that the ALJ erroneously omitted any supported work restrictions suggested by Dr. Herz. The ALJ's overall assessment of Dr. Herz should be sustained.

**b.      Examining Psychologist Dr. Bartol**

Pearson contends the ALJ erroneously rejected the opinion of examining psychologist Dr. Bartol. Pearson specifically contends that "though [the ALJ] says she is giving his report some weight, no apparent reliance on Dr. Bartol's opinion is reflected in the decision." Pl. Opening Br. 32.

The ALJ discussed Dr. Bartol's June 2003 assessment, with diagnoses of PTSD, "early onset dysthymic disorder," and a personality disorder with borderline and obsessive-compulsive features. Tr. 30. The ALJ concluded, "his report is given some weight but is not entirely persuasive." *Id.* The ALJ supported this determination by noting that Pearson's "mental status examination was actually pretty good" and that "the claimant denied symptoms consistent with obsessive thoughts or compulsive behaviors." *Id.*

Dr. Bartol examined Pearson on June 24, 2003. Tr. 293-99. Dr. Bartol based his assessment upon a clinical interview and mental status exam. Tr. 293. Dr. Bartol assessed "chronic" PTSD, "early onset" dysthymic disorder, and borderline personality disorder with obsessive-compulsive features. Tr. 298. Dr. Bartol made this assessment "based on [Pearson's] history and presentation." *Id.* Dr. Bartol did not explain his personality disorder diagnosis.

The ALJ may reject a physician's opinion that is inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216. Furthermore, the ALJ need not accept all aspects of a

physician's opinion. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ may

additionally reject a physician's opinion predicated upon report or behavior of a claimant deemed

not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). For these reasons, the

ALJ's assignment of "some weight" to Dr. Bartol's opinion should be sustained. This court

furthermore notes that Dr. Bartol identified no work-related limitations omitted by the ALJ.

### c. Reviewing Psychologist Dr. Dragovich

Pearson submits that the ALJ erroneously assessed the opinion of reviewing psychologist

Dr. Dragovich. Pl. Opening Br. 33-34. As noted, this court does not accept the ALJ's citation to

Dr. Dragovich in rejection of Dr. Herz's opinion.

Dr. Dragovich testified at Pearson's hearing before the ALJ. Tr. 559-575. The ALJ

noted Dr. Dragovich's testimony that Pearson had a moderate depressive disorder, an "element of

anxiety," but that Dr. Dragovich "did not believe" the diagnoses of PTSD, bipolar disorder, and

personality disorder were adequately supported by the record. Tr. 32. The ALJ also noted that

Dr. Dragovich stated that "she believed the claimant was exaggerating her symptoms; the

claimant's self reports were not entirely valid, because her presentation at examination showed

that she was cheerful, bright, and coping well." *Id.* The ALJ subsequently "adopted" Dr.

Dragovich's opinion. *Id.*

Because Pearson does not show reversible error in the ALJ's assessment of Drs. Herz and

Bartol, Pearson's argument carries little weight. The ALJ may utilize the opinions of reviewing

physicians, provided she applies the proper legal standards. 20 C.F.R. §§ 404.1527(f),

416.927(f). Because Pearson fails to show that the ALJ inadequately rejected the properly

supported opinion of a treating or examining physician or psychologist, the ALJ's reliance upon reviewing physician Dr. Dragovich should be sustained.

## C.    Discussion: Physical Impairments

Regarding Pearson's arythmia, the ALJ cited records describing Pearson's reduced exercise tolerance with premature ventricular contractions. Tr. 30. The ALJ also cited a nurse practitioner's October 2004 report of an EKG reading suggesting ventricular trigeminy. *Id.* Finally, the ALJ discussed the opinion of Pearson's cardiologist, Dr. Widmer. *Id.* The ALJ noted Dr. Widmer's opinion that "claimant's cardiac condition, in fact, was benign." *Id.*

On December 9, 2005, Dr. Widmer submitted a detailed letter to the record regarding Pearson's disability claim. Tr. 505-07. Dr. Widmer summarized Pearson's diagnoses, "I believe she has symptomatic premature ventricular contractions ["PVC"] and I think it is possible that she has the syndrome of inappropriate sinus tachycardia. I cannot be positive regarding the latter diagnosis as this was based on one episode of documented sinus tachycardia." Tr. 505.

Dr. Widmer then explicitly addressed the effect of Pearson's cardiac symptoms upon her ability to work:

> The issue and question posed by these disability proceedings is whether Ms. Pearson's PVC's and paroxysms of sinus tachycardia, regardless of certainty of diagnosis, is causing or contributing to her disability. I think it is safe to say that PVC's and paroxysms of sinus tachycardia would not, in and of themselves, cause physical disability in a normal person. PVC's and sinus tachycardia, in and of themselves, would not preclude a normal individual from performing a competitive level of employment on a sustained basis or miss three of more days of work because of worsenings, agravations, or other barriers and limitations related to health or mental problems. Symptoms associated with PVC's can be farily significant . . . I have never seen any normal person experience

PVC's to the point where they are unemployable.
Tr. 506.

Dr. Widmer added, "I also think it is safe to say that the patient is not a normal person," citing Pearson's PTSD and depression diagnoses." *Id.* Dr. Widmer then stated that, while he thought it possible Pearson's mental impairments interacted with her cardiac etiology, he could not be certain. *Id.* Dr. Widmer finally declined to make a physical capacity assessment as "the PVC's and paroxymal sinus tachycardia should not impair physical activity in and of themselves and I am not qualified to make an assessment of whether her mental health, even though exacerbated by her cardiac condition, impairs her physical capacity." *Id.*

The ALJ's assessment that Dr. Widmer thought Pearson's cardiac symptoms "essentially benign" is thus based upon the record. The ALJ considered Pearson's cardiac impairment in conjunction with her other impairments in her discussion. Pearson does not point to any properly supported limitations caused by her cardiac symptoms omitted from her RFC. For these reasons, the ALJ's assessment should be sustained.

### D.     Conclusion: Medical Source Statements

Even if credited, opinions of Drs. Herz, Bartol, and Widmer suggest no additional work-related limitations beyond those established in the ALJ's RFC assessment. Except as noted, the ALJ's assessment of the medical source opinions should be sustained.

## III.    Lay Witness Testimony

Pearson asserts that the ALJ erroneously addressed testimony submitted by numerous lay witnesses.

///

## A.    Analysis

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d);

404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members

in a position to observe the claimant's symptoms and daily activities are competent to testify

regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The

ALJ may not reject such testimony without comment, but may reject lay testimony inconsistent

with the medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236

F.3d at 512.  If an ALJ rejects lay witness testimony entirely, he must give reasons germane to

the witness.  *Nguyen*, 100 F.3d at 1467.

## B.    Discussion

### a.    "Other" Sources

Practitioners not deemed "acceptable medical sources" are considered "other sources by

the Commissioner's regulations are evaluated as lay witnesses.  20 C.F.R. §§ 404.1513(d),

416.913(d).

Pearson's reply brief suggests that "because the defense has not addressed plaintiff's other

arguments . . . in support of giving non-acceptable source evidence deference it has conceded

these points."  Pl. Reply Br. 6.  This court will not accept submissions contrary to the

Commissioner's regulations.  Physician assistants, social workers, and nurse practitioners are all

considered"other" sources in evaluating disability claims.  20 C.F.R. §§ 404.15134(d),

416.913(d).  Clinical opinions produced by such sources are not accorded greater weight than the

opinions of medical sources.  *Id.*  These sources are evaluated as lay testimony.

Pearson specifically contends that Turner's letterhead suggests she is a licensed clinical psychologist. Pl. Opening Br. 28. The ALJ noted that "Turner has a Ph.D. but it is not evident in what area she obtained this degree. She is not a licensed psychologist and she is not considered an acceptable medical source." *Id.* Turner's letterhead indicates that she is a licenced clinical social worker ("LCSW") with a Ph.D. Tr. 256. The letterhead does not indicate a license to practice clinical psychology. *Id.* The ALJ's analysis of Turner as a lay witness is based upon the record and should be sustained. As such, she may only testify to the severity of an impairment; she may not establish an impairment of record. 20 C.F.R. §§ 404.1513(a) and (d), 416.913(a) and (d).

The ALJ cited Pearson's reports to Turner and Turner's PTSD diagnosis and noted that Turner was "somewhat equivocal" in her statement. Tr. 29.

The record shows that Turner reiterated Pearson's report and concluded:

> Since Patricia is a very bright, competent, hard driving, and somewhat perfectionist person she is not someone who would complain about her health without good reason. I recommend that she be placed on disability for at least for weeks, at which time her case will be reevalataued. During this time she will see me for individual therapy . . .

Tr. 256. This report does not constitute a direct observation of Pearson's ability to function. For this reason, it the ALJ's rejection was appropriate. There are furthermore no observations this court may credit.

### b. Holly Dundom

The ALJ assessed testimony offered by Pearson's daughter, Holly Dundom. Tr. 33. The ALJ noted Dundom's report of Pearson's past intoxication, daily naps, and activities of daily

living. *Id.* The ALJ concluded, "this testimony is a bit internally inconsistent and is not entirely consistent with the medical reports. But it is taken into account and given some weight." *Id.*

The record shows that Dundom submitted a statement to the record on October 27. 2003. Tr. 172-81. She also testified at Pearson's October 2005 hearing. Tr. 545-553. In October 2003 Dundom stated that Pearson drives daily, does "lots of housework" for exercise, bowls "quite a lot," and makes blankets as a hobby. Tr. 175-76. Dundom also stated that Pearson's "errands" consume a lot of time. Tr. 179. Dundom finally stated that Pearson is "tired and worn out." Tr. 181.

At Pearson's hearing Dundom testified that Pearson "tires out very easily." Tr. 546. Dundom testified that Pearson reports to Dundom that she is unable to complete mowing the lawn or doing dishes because "her heart started acting up." Tr. 547. Dundom stated Pearson requires 12 hours of sleep. Tr. 548. Dundom also stated that Pearson "has a clean house," which she cleans "two or three hours" at a time, but "I can't say that I've actually seen her vacuum." Tr.549, 550. She also stated Pearson requires rest while washing dishes. Tr. 549.

Dundom subsequently testified that her endorsements and descriptions of Pearson's activity in October 2003 did not describe "things she did frequently." Tr. 551. Dundom's October 2003 report did not make this distinction. Tr. 172-81.

The ALJ's finding that Dundom's testimony "is a bit internally inconsistent and is not entirely consistent with the medical reports" is based upon the record: Dundom described varying levels of activity and no medical provider endorsed cardiac symptoms which would interrupt daily activity. For these reasons, the ALJ's analysis of Dundom's testimony should be affirmed.

### c.    Additional Lay Witnesses

Pearson challenges the ALJ's analysis of additional lay witness testimony. Pl. Opening Br. 25-28. She names eight lay witnesses but does not assign error to the ALJ's citation to each individual. *Id.* Instead, she argues that the ALJ inaccurately noted "some differences between their testimony." *Id.* at 26.

The ALJ reviewed "other reports from family and friends." Tr. 33. The ALJ cited exhibits referring to submissions by Marcia La Ford, Gordon Johnston, Patsy Stout, Sharon Bodenbender, Kathleen Ann Dundom, Sarah Stafford, Harry Dundom, and social worker Mary Miyakawa. Tr. 33. Pearson does not challenge the ALJ's omission of Kim Johnston's submission and it will therefore not be addressed.

The ALJ cited "some differences" between the testimony cited, noting discrepant reports about Pearson's "slovenly" or "neat" appearance, as well as differing descriptions of Pearson's report of witnessing a murder. *Id.* The ALJ concluded, "the lack of consistency and obvious reliance on the claimant's less than fully credible statements reduce the usefulness of these statements." *Id.*

Because the ALJ did not reject these statements entirely, she was not required to give a germane reason for rejecting the combined testimony of Pearson's friends and family. *Nguyen,* 100 F.3d at 1467. The ALJ furthermore noted that this testimony was inconsistent with the medical evidence in two ways: medical reports showed that Pearson appeared clean and neat rather than disheveled and medical reports did not accept Pearson's report that she witnessed a murder at face value. *Id.* The ALJ may reject elements of lay witness testimony inconsistent with

the medical record. *Lewis*, 236 F.3d at 512. This reasoning should be sustained.

Finally, Pearson concedes that she has not seen LaFord and Bodenbender regularly since 1999 and an unspecified "time she moved." Pl. Opening Br. 27. This is before Pearson's alleged disability. Regardless of their submissions, this court will not entertain crediting their testimony as they have not seen the claimant during the period she alleges disability. This is because lay testimony's value stems from observation of the claimant, not reiteration of claimant's narrative. *Doddrill*, 12 F.3d at 919. Any error regarding their testimony is therefore harmless. *Stout*, 454 F.3d at 1056.

### C.   Conclusion: Lay Witness Statements

In summary, the record does not support the allegations of the many lay witnesses in this case. The ALJ may reject testimony that is internally inconsistent. *Smolen*, 80 F.3d at 1284. The ALJ may also reject lay testimony inconsistent with the medical evidence. *Lewis*, 236 F3d at 512. This court also emphasizes that lay witness testimony is valuable because it may show observations of a claimant's functioning. *Doddrill*, 12 F.3d at 919. Lay witness testimony which reiterates a claimant's reports does not have this value. For the reasons above, the ALJ's evaluation of the lay witness testimony should be sustained.

## IV.   Vocational Expert's Testimony

Pearson finally contends that the ALJ's questions to the vocational expert ("VE") at step four of the sequential proceeding was not based upon an appropriate RFC assessment. Pl. Opening Br. 34-35.

The ALJ is not required to include unsupported limitations in her hypothetical questions

to a VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001). For the reasons established above, Pearson fails to show substantive error in the RFC assessment. The ALJ appropriately relied upon this RFC and the VE's testimony in her step five finding. *Id*. Pearson therefore fails to show error in the ALJ's questions to the VE.

## CONCLUSION

In conclusion, Pearson has not identified reversible error in the ALJ's RFC assessment and has not established that she is unable to perform her past relevant work at step four. Except as noted, this court finds that the ALJ based her findings upon substantial evidence under the proper legal standards.

## RECOMMENDATION

This court finds that the Commissioner's decision that Pearson did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and recommends the Commissioner's decision be AFFIRMED.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Findings and Recommendation, if any, are due by November 7, 2007. If objections are filed, any responses to the objections are due 14 days after the objections are filed*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will

constitute a waiver of a party's right to appellate review of the findings of fact in an order or

judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 23 day of October, 2007.

Mark D. Clarke
United States Magistrate Judge